Good morning. Fred Fenster, appearing on behalf of Caltex Plastics and the Shannon litigation. This appeal essentially raises two questions. The first question is whether the district court's exclusion of the expert declaration of Jim Higgs that was submitted in opposition to Shannon's motion for summary judgment. Counsel, would you please pull the microphone out if you're going to read to us and speak right into it? Okay. Short people, I suppose we should do that. Thank you. Okay. So the first issue on appeal is whether the district court's exclusion of Jim Higgs' deposition I'm sorry, of his declaration was tantamount to a dismissal. And if so, whether Caltex was afforded its due process rights. The second issue is whether the district court erred by not finding a triable issue of fact as to the literal falsity of Shannon's claims that its static shielding bags were designed to meet military specifications. Now, I'm going to go to the second issue first. And the reason I'm going to go to the second issue first is because there are some statements that were made in the advertising, and they include that Shannon manufactured the SS-103, which is its static shielding bags, to MIL-PRF-81705 type 3 specification. I'm not going to repeat what I said before, but it's the same problem here. But the second thing that they stated is that its products, its static shielding products, are subjected to the MIL-B-81705 test method. So the court inquired before as to if they identified that they had done any kind of testing. And it says here that that's what they did. And, of course, that creates another issue, and that is if you take a look at what it is that they produced in terms of the testing that they did, it showed that that testing didn't even address a number of the categories that were identified that had to be met that were set forth by the government in terms of its website that talked about what you have to do, the qualifications that you have to achieve in order for you to become qualified or even submit what it is that you're going to submit to the government for qualification by the Navy. So a couple of points that I think are kind of very germane to this issue is that the district court concluded, and I quote specifically because it has imperative value, the district court concluded that, quote, without the Higgs declaration, which has been excluded, plaintiff fails to prove sufficient evidence showing that Shannon's product testing claims are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made. Now, that's one heck of a standard to be articulated on a motion for summary judgment, where the only standard is whether there's a factual issue that is of a materially disputed item. So this court came to a conclusion that not only wiped out everything that Caltex was attempting to establish, but it also used the wrong standard in terms of whether or not summary judgment was appropriate. And so for those two reasons, it seems that there should be a reversal. In addition to that, there were triable issues of fact taking apart or disregarding the Higgs declaration. One is the one that I mentioned is that Shannon claimed in its own testing that it established that the statting shielding products were subject to MILB 81705 test method, but it didn't pan out because they didn't approach a lot of the factors that were required in order to meet that standard and then submit it. Also, and in that, there are 19 performance requirements that must be satisfied before a product can be designated MILPRF type 3. And the test results produced by Shannon, which they introduced into evidence, show that none of its products were subjected to a majority of those tests. And in one instance, it was only subjected to one test. Counsel, if I could jump in. I think the thing I'm concerned is the wrong word, but just I have the most questions about in this case, is what happened with the Higgs declaration, the procedural history surrounding it. It was submitted in opposition to the motion for summary judgment. And I understand that the motion for summary judgment was filed by Shannon in the opposition. Right. And then in the reply in support of the motion for summary judgment, Shannon argued that, hey, what's this Higgs declaration doing here? It wasn't in the 26A disclosure, and by the way, it looks like he looked at some things he shouldn't have looked at. So let's kind of freeze it right there. At that point, in looking at the pleadings, I did not see that there's a case called R&R sales, which is a very good case for your side in this thing, but I did not see that case ever cited to the district court, the requirements that R&R sales would – our case in this area is confusing, but seems to impose upon a district court. Was that ever raised to the district court when the Higgs declaration issue arose? Did you ever say to the district court, well, hold on a second, district court, before you can strike this thing, you have to do all these things that the R&R sales case lays out, and you haven't done that? The answer is advance notice. There was none. What the court did after the reply brief was submitted was it took the hearing off calendar and then made its own determination. So we were never given that opportunity. That's what I want to ask you about, because I know under Local Rule 7-10, and you cited it in your papers, that you can't just file a surreply. Right. But did you ever seek leave to file a surreply? No, because the court never – no, we did not. And the reason we did not is because the court basically took it away from us, and since it's an immediately appealable issue in terms of whether or not summary judgment was properly granted, we decided to move that route. Why not, if the issue is the district court effectively blew it? I mean, you know, my word is not yours, but the district court blew it here. You're saying, look, there's this R&R sales case that says you have to do all of these things. When you filed the opposition to summary judgment, at that point, why didn't you say – I'm just trying to understand what happened here. Say, look, we know this wasn't in the 26A disclosure. Our mistake. We have a legitimate reason why, and you can't take bad action against us on R&R sales. Was that ever done? No, for the reasons that I stated. We just decided strategically that the appropriate part – the appropriate approach at that point, since there's no new law and there's no real reason for reconsideration, and I'm not sure that the court would have done anything, we decided that we had a better shot in terms of appealing the motion for summary judgment that was granted. But you're asking us to hold that – I mean, I guess the standard – you used to argue it's de novo review here. Yes. There's no abuse of – even though it is a discretionary call by Judge Liu, you still say we would review that de novo because it's in the context of summary judgment, not some other context. Correct. Okay. But just to be clear, though, that the R&R sales – the first time R&R sales was cited to a court was to this court. That is correct. Okay. Got it down. Can I ask you one quick question? Was Shannon one of their – in the earlier case, was Shannon one of the people who sold to – That was their supplier. That was their supplier. So their supplier was actually saying that they conducted tests. Yes. That's correct. And the only other thing that I would say is that there were certain sanctions that could have been imposed that were lesser sanctions, and the court decided not to even consider any of those or give the parties an opportunity. First of all, Mr. Higgs was well known to the other side. They even identified him as a trial witness. And number two, in terms of what we are looking at, the fact that Mr. Higgs did not sign the nondisclosure agreement does not change the fact that the evidence that we are relying upon to create that factual issue is evidence that came directly from the defendant. I mean, I suppose what the defendant is arguing is this. Had he signed that nondisclosure agreement, that somehow or other that evidence never would have come into trial. Well, that evidence was a key to the trial. Whether it was going to be protected by the protective order or not, it was still evidence that was going to come in to support the defense position. So we used that evidence for the obvious purpose of showing that there was no way that they met the standard because they didn't even apply most of the 19 factors that were required in order to achieve that objective. And that's it. Unless there are any other questions. Do you want to reserve your time? Yes. Sure. Good morning. Gary Anderson again on behalf of Shannon Packaging this time, Your Honors. I will take it in the same order that counsel did. We'll go to the second issue where he said that, where he argued that despite the Well, counsel, I just have a preliminary question. Yes. Why doesn't the Higgs declaration create a material dispute of fact? Because the Higgs declaration is filed in response to the declaration of Shannon's president, Mr. Walsh. And in his declaration, he specifically testifies to the actual testing that Shannon did. Shannon on their spec sheet, and the spec sheet is what counsel quoted from that has the language of design to meet. It gives these different criteria, characteristics of the bags from different standards. There's one mil spec standard listed on the spec sheet, and it's the EMI standard. And what Mr. Walsh said in his declaration was that that's the testing that they did, the testing that was referenced on their spec sheet. They have a testing facility at their warehouse or place of business, and they test every new supply of film that comes in from their supplier before they make the film into the bags. They test it in their own in-house facility. If it fails the test or there's an issue, they ship it to an outside third-party independent testing agency to test the product. So that was the evidence about the nature and scope of the Shannon packaging testing. The Higgs declaration talks about, does not challenge Mr. Walsh's testimony about that's what Shannon did. What the Higgs does, I mean, what the Higgs declaration does is raise a whole bunch of red herrings, and that's these other 18, 19 elements of the 81705 spec. And Mr. Higgs is going, I looked at this, and they didn't test any of that. Well, they didn't say they did. That's not what Mr. Walsh said he tested. So to point to some things that we never claimed to do, that's not raising a triable issue of fact. That's just a red herring. So I guess that's my answer to that question, Your Honor. Thank you. Why not just grant the motion for summary judgment if the affidavit was not really relevant to anything? Pardon? Why not just grant the motion instead of dealing with it as a sanction? Grant the motion for summary judgment if, as you say, it didn't contradict anything. I guess the court could have. I mean, we made the argument that that was harmless, you know, that it should have been out anyway. I don't know. I mean, Judge Liu, you know, he's the one who wrote the opinion. I mean, he could have. He could have gone that way. We made the argument in the motion on our reply that it doesn't really matter because he didn't create a triable issue. But I think the question, though, is that I appreciate your argument, and I would have made the same argument if I were you. But that's not what he said. I mean, he could have easily said, look, there's no issue in this case at all, Higgs declaration or not. And by the way, the Higgs declaration was totally messed up, so I'm striking it. But even if it was in, no difference here. I don't think we can read the order that way. In fact, I think there's some language in the order that can be read to say, I think it says, without the Higgs declaration, there is no triable issue of fact. So if that's our reading of the thing, don't we – I'm not asking you to concede anything, but the Higgs declaration, if we find that it was properly struck, then you're saying you prevail, correct? Right. And that's where that's – maybe I'll put – that's maybe your better argument in this case, right, you would say? Right. Okay. Right. So in thinking through this, I just want to understand the procedure. So you filed the motion for summary judgment, correct? Yes, we did. And then the opposition is filed with the Higgs declaration. Correct. And from your perspective, is that the first time you ever heard that Higgs was going to be a witness for Caltex in this litigation? Correct. Caltex did not identify Mr. Higgs in their initial disclosures, their 26A disclosures. They identified two Shannon employees. They did not identify a single actual Caltex individual having knowledge of the facts for this case. How were you actually prejudiced if that's true, even assuming that's true? By the submission of the Higgs declaration? The prejudice occurs in that at this point in time, we were filing a summary judgment motion at the deadline set by the court, March 31st. And you would have still filed it? Well, we'd have still filed it. So in that respect, your filing wasn't the prejudice? No, the filing wasn't there. But at the time we're filing this motion, there is a June 16th, 2015 trial date. Right. And tell me the date that you filed the motion. March 31st. Caltex filed its response on April 7th, a week later under the local rule. So they filed on April 7th. So on April 7th is the first time that we learn of Higgs. And so what? So you could have still conducted a deposition if you needed it. Well, at that point in time, fact and expert discovery was closed. Well, so what? So what? That all could be changed. I mean, we have a judge in our court I very much admire, Jack Weinstein. What he would have said was, go ahead and take the deposition. Who cares? I mean, the issue is to get it right. Yes, I guess theoretically we could have. In fact, he would have said, do it right now and I'll preside. And you would have finished it in about two hours. But that's not the full answer to the question, Your Honor, because with that trial date, I think the line you're going down was if you thought you were being harmed, the court could have just moved all the dates, set a new trial date, reopened everything. No, you could have even done it. It all depends. But it could have even been done while the summary judgment motion was pending. I mean, what's the big deal? Well, I guess the big deal is we made an objection to the declaration. And you're suggesting that what we should have done was go off and notice up his deposition. Exactly. Because I'm getting to the issue of your prejudice. I mean, the whole purpose of the rules is to see that justice is done. They're not rules in and of themselves. They're rules on the road to justice and to just results. And the road to just results would have suggested for whatever reason, okay, you claim you need a deposition in order to effectively deal with this affidavit. Go take it. I think that goes beyond that, Your Honor. And I think Judge Liu addressed that in his order. Not only would we have had to conduct discovery of Mr. Higgs with regards to the technical aspects of his declaration, depending on the outcome of that deposition or other discovery, most likely then, and the judge would have noted it in his order, we would have then had to hire our own expert and prepare our own rebuttal expert report. And with all of that squeezed in with the June 16th trial date, it couldn't be done. Well, then the June 16th trial date could have been adjourned. I mean, these are not absolute. I understand. But I think I'm going to then go back to the question raised about on the procedurally. In fact, let me jump in with a question. Did Shannon ever offer any of these as possibilities here? No. I'm not saying anything to Caltech. Did Caltech ever offer these as possibilities? Wait, Your Honor, how about we do this? How about we have a deposition? They didn't do anything, did they? No. But he claims he was taken by surprise. Counsel suggests that they made a tactical litigation decision not to seek any relief with respect to this. And I realize that, you know, I think without specifically addressing R&R sales, I believe in the order. Judge Liu really did go through the elements that you would need to – that you have to make a finding on. And he may not have specifically labeled them, but I think he went through those. The key here is that once Caltech was on notice that there's not going to be a hearing on this, if that's where they plan to argue against the objections, Your Honor raised the point that they could have sought leave to file a surreply or requested a hearing, just on that one issue. Not to further argue the motion itself, but just if they're going, oh, my God, they're objecting and they're asking that this be excluded, you know, we need to be able to be heard on this before the judge rules. Once that hearing was taken off calendar on April 24th, they were on notice. And they could have requested relief. They didn't. When you say taken off calendar, an order was entered, taken off calendar, or did it say why? No, the motion was set for a hearing on April 28th. I believe the Friday before the 24th, if that would be the Friday or maybe the Thursday, Judge Liu issued a minute order taking the matter off calendar and basically the motion submitted on the papers. It wasn't going to hold a whole argument. So at that point, they knew that if they had concerns or felt they needed the right to respond to our objections to the Higgs Declaration and the request that it be stricken, they could have taken some action. And they made a litigation, tactical, and counsel admits it, they made a tactical decision not to seek relief. And they had more than ample time. The decision didn't come down for another five weeks after they knew that they weren't going to have a hearing. So I think that came out clear in counsel's concession. But in terms of the other factors, what you have here is it wasn't a harmless error. Counsel made reference that, you know, if Mr. Hicks, you know, he could have just signed the Exhibit A to the protective order and all the problems would have been resolved, this wouldn't really be an issue. Except that it ignores the fact that Caltech's lawyers showed Mr. Higgs exhibits that had been marked attorney's eyes only, confidentiality level under the protective order. And under the terms of the protective order, employees of the parties were not entitled to see the other side's attorney's eyes only material. Mr. Higgs is the right person. Well, he said it was part of the record. It would have had to come out. It would have come out through a properly designated expert witness, not a last-minute sandbag expert witness who wasn't even authorized to see the materials he was testifying about in his declaration. Can I ask you one question? It may not be clear in my mind. When your adversary said it was a strategic decision, was he referring to the minute order or was he referring to the decision not to ask for any further relief once the judge decided the case? No. My understanding of his comment was it was that was after the minute order had taken it off calendar that they made the decision not to seek any relief. They figured this was, as he said, I believe it's a directly appealable issue. If the judge kicks it out, we'll take it right up to this court, to the Ninth Circuit. I have a question about sanctions. Yes. About lesser sanctions. Weren't lesser sanctions warranted? I noticed the district court didn't appear to me to explicitly consider this. What is your response? My response is the availability of lesser sanctions were sort of rolled into his analysis of the prejudice to Shannon in that given the time, where we were in the timeline of the case just a few weeks before trial. But isn't that a separate question from whether alternative sanctions were available? Short of exclusion, I think the only type of alternative sanctions that might be available was what his Honor asked about in terms of we'll take his deposition, move the trial date, do whatever. I'll just give them whatever time. In essence, I think whatever time they need. You could say that the extra costs of the deposition. There are other kinds of sanctions that can be imposed. I mean, granting summary judgment is the ultimate sanction. Well, actually, all of them. I mean, judges fine people. They do other things that could be characterized as sanctions without essentially terminating the case. That is true, Your Honor. But again, I think here you have to look at the overall posture of the case, where it was time-wise, and there really wasn't one that because if you do a lesser one, then in essence, what that ruling would end up holding is that a litigant can engage in the type of conduct that Caltex did. You can basically miss all the deadlines under Rule 26 in terms of identifying witnesses, experts, et cetera. You can respond to a document request asking you to produce all your expert reports. You can object that that's privileged and not produce expert reports, so basically stonewall it. And you roll the dice and go up to show up at trial with this surprise expert witness who was never properly identified, who didn't have a proper report submitted, and throw it in there. And if the court, if the other side objects and the court agrees and strikes it because it was improper, that's okay because you're going to get another bite at the apple. We'll fix it a different way. But there's got to be a point there that there's some consequence of one of the parties not following through. You're giving a hypothetical. That's not this case. There was no trial. It was in a pretrial phase. You were trying to avoid a trial. That's right, but we were gearing up for trial. And there were alternatives. As I see it in this case, the only alternative would have been for the judge to basically vacate the trial date and provide time. But at that point in the procedure, that wasn't for us to ask. I think Shannon properly took the procedure it did. We were given a surprise declaration by somebody who hadn't been identified. The declaration showed that they had breached the protective order. So I've got two harms going on here. I've got they didn't follow the rules and they breached the protective order. We requested that it be strengthened. I understand your argument that's really one, because had they not breached it, had they provided you with this information beforehand, this affidavit beforehand, then the expert could have relied on the so-called privileged information. If they had a proper expert, correct, Your Honor. So it's really one. You're making two into one or one into two. Actually, it's one into two. Well, in his order, Judge Liu actually excluded it on two different grounds, for failure to comply with Rule 26 and for the breach of protective order under 37C. So I'm just sort of following the outline that he had. He excluded it on two different grounds. Unless there are any other questions. Thank you very much, counsel. Counsel says that there was prejudice to Shannon. There was no prejudice to Shannon because the very documents which established the literal falsity of the claim came from Shannon, which Shannon voluntarily produced in response to discovery requests. The messenger may not have been the right messenger, but the facts and the information were not invented by the expert. They were invented and created and provided by Shannon. That's the first point. Can you clarify for me, when did you make this strategic decision? Was it after the minute order was entered or after the judge ruled? After the judge ruled. We had no idea what the judge was going to do with respect to anything. That's what I thought. That's why I asked you the question. No, we had no idea. And tell me, what was the strategy? Did you think it was a waste of time to go back to the judge? Well, I can't say what my client thought. The answer is yes, we thought it was a waste of time. And since on appeal the test is de novo, we thought that that would be we'd get a more fair hearing. Counsel, I guess what I don't understand is that when they file a motion saying you should dismiss this declaration and effectively which would dismiss the case, you don't seek leave to file and think, hold on a second, Your Honor, there are some alternatives here. Before we go down that road, we can extend the discovery time. We can do this. We can do that. Two things. Number one, there was a suggestion in the reply brief by Shannon as to a lesser sanction, which would be to permit the deposition to be taken, and the court disregarded that. The second thing is they always knew who Higgs was because they identified him as a witness on their side for trial. But I'm saying as to your side, especially when they're offering the out, an alternative is something short of dismissal. I still don't understand why we're talking about tactical decisions, why you wouldn't say, yeah, good idea, don't dismiss the case, do what they just said. Because we looked at the cases, and the cases talk about sanctions, not the ultimate sanction, but lesser sanctions that would have been available, which would not have compromised our position. But none of those cases were put before the district court. That's correct because we decided that it was going to be fruitless. So that was before then, the tactical decision. That's the time frame I'm talking about. I'm talking about when they said. No, we made that decision after the judge issued his order. Okay, but I'm going back to the time period. Again, they filed a brief saying strike it and get rid of everything. I'm trying to understand why at that time the district court was not afforded the opportunity to really consider the alternative options here. Because the local rules said you can't put in a surreptiter. You've been practicing in the center for a long time. You know you can seek leave to file a surreptiter. And that didn't happen here. So I'm trying to understand. There's that time period, there's that several-week time period, more than a month to give the district court the opportunity to consider these lesser sanctions. Instead of us doing it now, giving him the opportunity to do it. I'm just trying to figure out why that was never done. Because of the reason that I mentioned. I can't change the reason. The reason is because when Judge Liu rendered his decision. I'm talking before he rendered it. I'm talking the time period. They filed the thing saying get rid of the whole case. Five weeks or six weeks passed until the judge makes that decision. During that time period, why wasn't Judge Liu given the opportunity to consider the cases that you say are important for us to consider? That time period, why wasn't he given the chance to do that in the first instance rather than asking us now to do it to him? The only answer to that is because we wanted to wait and see what the judge did. We had no idea what the judge was going to do. But you know they're asking to dismiss the case. I mean, the fireman's squad is coming. Don't you want to say, hey, look, before the fireman's squad, just give me some time in the hot box? I mean, you don't just say, well, we'll see if the fireman's squad shoots us. I mean, don't you want to at least do something before then? I'm just trying to understand why this happened. Let me say it this way. Here's the way we evaluated it. If we sought leave to amend, not leave to amend, but if we sought leave to permit the other side to take his deposition and the court said okay, that would have been okay. If the court said no, we would have had an issue on appeal. They might have said, well, we want to wait until we see what's going to happen. That's something that the judge has to make a determination. But if so, was the tactical decision made before the judge's order? Basically, yes. Okay. Well, because before you said the tactical decision was made after the judge's order, but it really was one before. Well, it's the decision with respect to the appeal and what we were going to get out of it, that was discussed after the order came in. Right. You know the time period I'm talking about here. The time period that you're talking about when we saw that request, we looked at the cases and figured that there was no way under the case law that the judge was going to do what he did. And we didn't know until he did it that he was going to not consider any lesser sanctions. Now, I have a better understanding of what you're arguing. Thank you, counsel. And, in fact, they offered or they suggested a lesser sanction. Yes. We still have time, counsel, if you want to wrap up. Okay. Very good, counsel. Thank you very much. This matter in Shannon packaging is submitted. Thank you, counsel, for your argument in both cases.
judges: D.W. Nelson, Owens, Korman